No. 27,053.

THE INTERCITY STATE BANK, *Appellant*, v. HENRY C. ALWES,
*Appellee*.

SYLLABUS BY THE COURT.

BILLS AND NOTES—*Holder in Due Course—Knowledge of Fraud—Sufficiency
of Evidence*. The proceedings considered in an action by the holder of prom-
issory notes to recover from the maker, and *held*, the evidence was sufficient
to establish the defense that the notes were procured by fraud and the
holder was not a holder in due course.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. McCAM-
ISH, judge. Opinion filed January 8, 1927. Affirmed.

*James L. Hogin*, of Kansas City, *W. F. Wilkinson, Frank Lee Wilkinson*
and *David P. Dabbs*, all of Kansas City, Mo., for the appellant.

*Louis R. Gates*, of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the holder of promissory
notes to recover from the maker. The defense was the notes were
procured by fraud and the holder was not a holder in due course.
Defendant prevailed, and plaintiff appeals.

The Zip Manufacturing Company made patches to repair inner
tubes of automobile tires. It purchased rubber, put on a solution,
packed the patches in cans, and sold them on the market under the
name "Zip Patch." Ballentine was secretary of the company. Wil-
liams was one of the organizers of the company, and was a director.
On November 20, 1920, defendant went to the office of the company,
there met Ballentine and Williams, and as the result of a conversa-
tion with them, purchased shares of stock of the company. To pay
for the shares he gave the company the ten notes sued on, nine for
$80 each, and one for $70. On the same day, plaintiff purchased
one of the notes outright, and took the others as collateral to an
obligation of the company. Defendant made the purchase of stock
on the representation of Ballentine that the company was in sound
financial condition. Williams' part in the conversation was to
confirm what Ballentine said, and Williams told plaintiff he was
one of the directors, had known all about the concerns of the com-
pany, and knew all about the details of it. Certificates of stock
were never delivered to defendant.

Bills and Notes, 8 C. J. pp. 1046 n. 9, 1052 n. 50.

The court told the jury that in order for an industrial company to be considered on an unsound financial basis, it should appear it was in a failing condition.

The company did all its banking business with plaintiff. Williams was plaintiff's cashier, and had supervision of its books and records and the making of loans. On November 6, 1920, the company had a balance of $291.65. On November 8 its balance was $855.15. On November 9 the balance was $767.15. On November 17 the account was overdrawn $15.23, and on November 18 the overdraft was $197.09. On November 20, when the stock sale was made, Ballentine said the company had a shipment of rubber from the East, and needed money to get patches out. Plaintiff's notes were taken to the bank, the company gave its 60-day note to the bank for $900, and plaintiff's notes, except one, were deposited as collateral. The $900 note was not paid at maturity, and has not yet been paid. On the day the $900 note was given, the bank held two notes of the company, one for $1,000, and one for $1,225.95. The note for $1,000 was unsecured, and was overdue. The larger note had some security, which appears to have been applied on March 26, 1921, leaving a balance of $526.05. The trouble with the company was, it was lacking in finances, and on January 29, 1921, its directors joined in giving the bank their personal note for $1,200, for the benefit of the company. Between November 20, 1920, and the latter part of March, 1921, there was little new stock in the plant, the material on hand never increased, and an employee told plaintiff the stuff he was putting in cans was old stuff. Neither sales nor profits were reported, and reports kept coming in worse and worse. On March 31, 1921, the company had a balance at the bank of 45 cents. On April 21 the balance was $30.05. It thus appeared that between the 6th and the 20th of November the company's bank account slumped deeply into the red. The company was without available assets to pay its debts as they fell due, or the overdue $1,000 note would have been taken up. While the company was owing the bank $2,225.95, $1,000 of which was in default, it was obliged to borrow $900 on plaintiff's notes to do business on. It did not have a business which was even self-sustaining. There were no sales or profits, and in January the pulmotor method of raising money on the personal note of the directors was resorted to. In March its November obligations to the bank were still undischarged, and on March 31 its check for 50 cents would have been turned down.

Intercity State Bank v. Alwes.

The foregoing presents the evidence most favorable to defendant, and inferences from the evidence most favorable to him. The court is not concerned with testimony which might put a better face on the company's affairs, with more favorable inferences which might be drawn from the testimony, or with rules relating to cogency of proof in the district court; and it declines to enter into any debate with counsel for plaintiff respecting the sufficiency of the evidence to sustain the verdict. There was some substantial evidence that on November 20 the company either had no assets, or was unable to realize on assets, to take care of its obligations as they fell due in the usual and ordinary course of business, and such a financial condition is not a sound one, within the court's definition.

The testimony relating to the state of the company's bank account in March, 1921, was not introduced by defendant. It was given by Williams, as a witness for defendant, on cross-examination by counsel for plaintiff. Defendant offered in evidence the ledger sheet showing the company's account with the bank from November 16, 1920, to April 21, 1921. Plaintiff says the court ruled that evidence of the condition of the account subsequent to November 20 was not relevant, and the offer was withdrawn. The record does not show the testimony of Williams was withdrawn, and the jury was privileged to consider it, in connection with other evidence, as bearing on the company's financial condition on November 20. This brings up the general method pursued by plaintiff in dealing with the evidence, which is to confine evidence of failing condition strictly to November 20, 1920.

The issue was the state of the company's finances on November 20, 1920. Defendant was not required to present an inventory of the company's assets and liabilities on that day, prove the value of the assets, and strike a balance. Facts which are the usual concomitants or consequences of financial ability or inability were relevant, and the proof of such facts may cover a reasonable period after as well as before the date in issue. In the case of *The State v. Cadwell*, 79 Ia. 432, it was held an assignment made on October 7 might be considered as bearing on solvency in the preceding May. In the opinion it was said:

"The deed of assignment tended to prove insolvency at the time it was made, which, it is true, was nearly five months after the deposit; but, if it alone, or with other evidence, established the fact of insolvency at that time,

that fact might be an aid in determining the true condition of the bank in May, by showing what changes had taken place in the property affairs of the firm in the meantime. To plainly illustrate, let it appear from other evidence that no change had taken place. Then, of course, there was insolvency in May. If changes, then what were they? And the fact is a question for the jury. It is true, as said in argument, that one may be free from debt in May, and hopelessly involved in October; but the October condition of the bank is not allowed to define or control that of May. It is only a link in the chain that establishes the ultimate fact." (p. 438.)

Speaking on the same subject, but with reference to a different state of facts, the supreme court of Wisconsin said:

"It must be conceded that, while evidence of the character of that in question might not establish a condition which would raise a legal presumption running backward, if the condition were not too remote it would not be entirely without evidentiary consequence. Such· consequence might be considerable under some circumstances. For instance, in case of proof of entire want of assets to meet liabilities a few days after the particular time vital to a controversy." (*Ellis v. State*, 138 Wis. 513, 525.)

In this instance the evidence disclosed financial embarrassment on November 20 which technically amounted to insolvency, and for the purpose of proving the company was in fact failing, defendant was entitled to show, within reasonable limits, that conditions did not subsequently improve, and the company was not able to extricate itself from its financial predicament.

Plaintiff says the court instructed the jury that the fact the company was borrowing money and was a customer of the bank did not raise a presumption of unsound financial condition. Very true. But the court did not instruct the jury that the fact the company was borrowing money had no bearing on the subject of sound financial condition. The court stated the law. It did not invade the province of the jury. The distinction is drawn in the case of *Ellis v. State*, cited above.

Defendant charged fraud in that the company promised to use his money to purchase material for the manufacture of Zip patches, and did not do so. The court withdrew this charge of fraud from consideration of the jury. Plaintiff would have the instruction embrace Ballentine's statement regarding the company's financial need. Nothing was withdrawn except promise to do something in the future, as a ground of fraud.

The notes having been procured by fraud, the burden rested on plaintiff to show it was a holder in due course. Williams denied he

was present and participated in the false representation which induced defendant to give the notes. The jury chose to disbelieve him. He testified that, aside from the amount of money the company had in the bank, he had general personal knowledge of the company's finances. The jury chose to believe him. As soon as the notes were delivered they were rushed to the bank, and as cashier of the bank he purchased them. Under these circumstances it is idle to discuss the subject of holder in due course.

The foregoing disposes of the merits of the case. Some criticisms of the instructions to the jury are not well founded.

The judgment of the district court is affirmed.